FILED
2025 Dec-12  AM 09:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY PITERA,** | ) | |
| **PLAINTIFF,** | ) | |
| **V.** | ) | **CASE NO.:** |
| **TIDAL WAVE MANAGEMENT** | ) | |
| **LLC,** | ) | **PLAINTIFF DEMANDS TRIAL** |
| **DEFENDANT(S).** | ) | **BY STRUCK JURY** |

### COMPLAINT

## JURISDICTION

1.     This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.     This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

**PARTIES**

4.    Plaintiff, Anthony Pitera ("Plaintiff" or "Pitera") is a resident of Florence, Lauderdale County, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the  Division.

5.    Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

6.    Defendant Tidal Wave Management LLC ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

7.    Defendant employed at least fifteen (15) people during the current or preceding calendar year.

8.    Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

9.    Defendant's gross annual revenue exceeds $500,000.

10.    Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

**FACTS**

11.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

12.    Anthony Pitera began his employment with defendant on or about April 17, 2023 as a Site Leader/Working Partner.

13.    Pitera is a person with disabilities, including Meningitis, Tuberculosis, and HIV/AIDS.

14.    Pitera received no discipline during his career with the company other than the discipline referenced in this complaint.

15.    Although the Defendant maintains a progressive discipline policy, Pitera never received any progressive discipline during his time at the company.

16.    The company performed appraisals of Pitera's store's performance monthly, and he never received any negative performance appraisals.

17.    Pitera's store was one of the highest performing stores in his region and was on track to be designated a High-Performance Site, which would have provided him with a substantial bonus and a Tesla vehicle.

18.    In or around April 2024, Pitera became severely ill due to his disabilities.

19.    When Pitera had his illness, he disclosed that he had Meningitis and Tuberculosis.

20.    Because of his illness, Pitera was hospitalized for over a month.

21.    Pitera took Family and Medical Leave until July 2024.

22.    He returned to his job upon the conclusion of his FMLA.

23.    After returning to work, Pitera immediately began to meet the standards for his site.

24.    On or around November 3, 2024, Pitera became ill with a complication from the medications he was taking for his disabilities.

25.    Pitera then sought an accommodation for his medical conditions, time off from work, because he had been hospitalized for a week.

26.    On or about November 13, 2024, when Pitera was released and cleared to return to work, he emailed a note from the surgeon indicating that he could return to work to Fairell Merrit, the Regional Human Resources Director.

27.    Merrit did not accept the note and told Pitera that he needed to get a second note from his primary physician.

28.    Pitera told Merritt that it would take some time to get a note from his primary physician because he could only see his primary care provider once a month.

29.    The company would not return Pitera to work, but he remained in contact with them.

30.    A week or so later, Merritt told Pitera that the company was going to remove him from his position as a site leader because the company did not believe that he could work the number of hours he was required to under the contract.

4

31.    Since Pitera's return from his April illness, he had been working more than the standard 55 hours of work per week.

32.    Pitera had not asked for any reduction in hours.

33.    In his absence, the company replaced him with a person who did not have a disability.

34.    Pitera continued to try to come back to work.

35.    On or about December 19, 2024, Pitera disclosed that he had HIV/AIDS.

36.    Merritt responded by saying "Wow, how did that happen?" Pitera said he did not know.

37.    Three days later, on or about December 22, 2024, Merritt called Pitera and terminated his employment.

38.    During the call, Merritt indicated that Pitera had misused the company card.

39.    Pitera had not misused the card, and all his credit card transactions had been reviewed and approved.

40.    Then Merritt said that Pitera had misused the company logo in an advertisement.

41.     This was also false, as the company required Pitera and other site leaders to advertise for the store, and there was no policy forbidding them from using the logo in the advertisements.

## COUNT I ADA DISCRIMINATION - TERMINATION

42.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

43.     Plaintiff suffers from the physical impairment of Meningitis, Tuberculosis, and HIV/AIDS.

44.     The Defendant knew of Plaintiff's disabilities.

45.     The Plaintiff's Meningitis, Tuberculosis, and HIV/AIDS affects him such that the major life activities of seeing, eating, breathing, concentrating, remembering, kidney functioning, urinating, and more are significantly restricted as compared to the average person in the general population.

46.     On or about November 3, 2024, through November 13, 2024, Plaintiff requested that Defendant provide a reasonable accommodation of allowing him time off work due to his hospitalization.

47.     After being hospitalized, Plaintiff was released and cleared to return to work.

48.    Defendant's Regional Human Resources Director would not accept Plaintiff's doctor's note or let him return to work and instead insisted that he get another doctor's note.

49.    Plaintiff was able to perform the essential functions of his job once he was cleared to be released from the hospital.

50.    At all times relevant to this complaint, Plaintiff performed the essential functions of his job duties as Site Leader in a satisfactory or better manner.

51.    On or about December 19, 2024, Plaintiff disclosed that he had HIV/AIDS.

52.    Fairell Merritt, the Regional Human Resources Director, responded by saying "Wow, how did that happen?" Pitera said he did not know.

53.    On December 22, 2024, Merrit terminated Plaintiff's employment.

54.    There is no logical, medical, or other basis to believe that Plaintiff's disabilities would prevent Plaintiff  him from performing the essential functions of the job.

55.    But for Plaintiff's disabilities, Defendant would have retained Plaintiff in his position as a Site Leader/Working Partner.

56.    Defendant violated the ADA by terminating the Plaintiff's employment because of his disability, perceived disability, or record of having a disability.

57.     Defendant violated the ADA by terminating Plaintiff's employment because of his accommodation requests.

58.     Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext for disability discrimination.

59.     Defendant treated other employees outside Plaintiff's protected class differently.

60.     Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II - ADA –- RETALIATION

61.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

62.     Plaintiff was qualified for his position and able to perform the essential functions of the job.

63.     On or around April 2024, Plaintiff engaged in protected activity when he requested an accommodation for his disabilities, Meningitis, Tuberculosis, and HIV/AIDS.

64.     On or about November 3, 2024, through November 13, 2024, Plaintiff engaged in protected activity when he requested that Defendant provide a reasonable accommodation of allowing him time off work due to his hospitalization.

65.    After being hospitalized, Plaintiff was released and cleared to return to work.

66.    Defendant's Regional Human Resources Director would not accept Plaintiff's doctor's note or let him return to work and instead insisted that he get another doctor's note.

67.    On or about December 22, 2024,  Fairell Merritt terminated Plaintiff's employment.

68.    But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Site Leader/Working Partner.

69.    Defendant violated the ADA by terminating Plaintiff for engaging in protected activity.

70.    Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT III - FMLA RETALIATION

71.    The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

72.    During the 12-month period before April 2024, the defendant employed the plaintiff for at least 1,250 hours of service.

73.     The defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of the plaintiff's hospitalization.

74.     During the week of April 1, 2024, the defendant employed fifty or more employees who worked within 75 miles of the location where the plaintiff worked.

75.     In or around April 2024, the plaintiff provided notice of unforeseeable FMLA leave to Defendant.

76.     The plaintiff provided notice of the need for unforeseeable FMLA leave the same day that the need for FMLA leave arose.

77.     Before April 2024, the plaintiff had never informed the defendant of the need for FMLA leave.

78.     On December 22, 2024, the defendant terminated the plaintiff's employment for misuse of the company credit card.

79.     Defendant's proffered reason for Plaintiff's termination was false, as all of his credit transactions had been reviewed and approved.

80.     Defendant switched the reason for Plaintiff's termination and said he misused the company logo in an advertisement.

81.     Defendant's new proffered reason for Plaintiff's termination was also false, as he was required to advertise for the store, and there was no policy forbidding him from using the logo.

82. The defendant's employees knew that the plaintiff suffered from FMLA-qualifying conditions for which he needed treatment through his doctor.

83. Defendant terminated the plaintiff's employment, in whole or part, because of the plaintiff's exercise of FMLA rights.

84. Because of the defendant's retaliatory termination decision in violation of the FMLA, the plaintiff has been damaged, suffering loss of pay and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

C. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D.    Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E.    Attorneys' fees and costs;

F.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G.    Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

/s/ *Kira Fonteneau*
Kira Fonteneau

**OF COUNSEL:**

The Workers' Firm LLC

2 20th N. Street Suite 900
Birmingham, AL 35203
(404) 214-0120
fonteneau@theworkersfirm.com

PLEASE SERVE DEFENDANT AS FOLLOWS

Tidal Wave Management LLC
115 East Main Street
Thomaston, GA 30286